UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LAURA H,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

20-CV-834-LJV
DECISION & ORDER

---

On July 6, 2020, the plaintiff, Laura H. ("Laura"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On February 1, 2021, Laura moved for judgment on the pleadings, Docket Item 9; on July 1, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on August 12, 2021, Laura replied, Docket Item 12.

For the reasons stated below, this Court grants Laura's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Laura argues that the ALJ erred by not giving controlling weight to the opinion of her treating physician and by relying on his own lay judgment in formulating her residual

2

functional capacity ("RFC").³  Docket Item 9-1.  This Court agrees that the ALJ erred and, because that error was to Laura's prejudice, remands the matter to the Commissioner.

I.  **RFC AND THE TREATING PHYSICIAN RULE**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received.  20 C.F.R. § 404.1527(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  See 20 C.F.R. § 404.1527(a)(2), (c)(2); see also Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3)

---

³ A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 404.1545, "in an ordinary work setting on a regular and continuing basis," see Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.

the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the ALJ gave "less weight" to the opinion of Laura's treating physician, Kellyrose Nichols, D.O., in formulating Laura's mental RFC and did not discuss Dr. Nichols's opinion at all in formulating Laura's physical RFC. Docket Item 8 at 271-73. Because he did that without explicitly addressing the *Burgess* factors, the ALJ erred and that error requires remand—at least with respect to the physical RFC.

Dr. Nichols completed a medical source statement in September 2019[4] and opined, that, due to her hearing loss, Laura was extremely limited in her awareness of normal hazards and therefore in her ability to take appropriate precautions. *Id.* at 554. Indeed, Dr. Nichols explicitly said that Laura's "hearing loss causes safety issues and decreases [her] sensory awareness." *Id.* at 555. Dr. Nichols also noted that Laura had difficultly communicating, *id.* at 552, and she said that her opinions were based on having treated Laura for three-and-a-half years, *id.* at 552.

---

[4] Although the statement is labelled "Medical Source Statement Regarding *Mental Health*," Docket Item 8 at 552 (emphasis added), it explicitly discusses Laura's hearing loss, *id*. at 552, 554-55. And because Dr. Nichols used the form to address the effect of that hearing loss on Laura's ability to communicate and to keep herself safe, the ALJ was obligated to evaluate it in connection with Laura's physical RFC regardless of the label.

4

Although the ALJ discussed Dr. Nichols's opinion in formulating Laura's mental RFC,[5] he failed even to mention it in formulating Laura's physical RFC.  *See id.* at 271-72.  Nor did the ALJ discuss what weight, if any, he gave to Dr. Nichols's opinion with respect to the limitations that resulted from Laura's hearing loss.  *See id.*  So this Court has no idea whether—or to what extent—the ALJ considered Dr. Nichols's assessment of Laura's hearing loss in connection with her RFC.  And when an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported [his] RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review."  *Gorny v. Comm'r of Soc. Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018).

In fact, the ALJ seems to have rejected—or simply ignored—Dr. Nichols's assessment.   For example, in explaining the physical RFC, the ALJ noted that "assessments do not reflect difficulty with communication or speech" and that there was a "lack of indication of deficits in the ability to communicate with others or be aware of

---

[5] In her medical source statement, Dr. Nichols opined that, due to Laura's depression and anxiety, Laura faced a number of limitations in her ability to work.  *Id.* at 552-57.  Laura also argues that the ALJ erred in failing to give controlling weight to Dr. Nichols's opinion in formulating her mental RFC.  *See* Docket Item 9-1 at 16-21.  The Court "will not reach the remaining issues raised by [Laura] because they may be affected by the ALJ's treatment of this case on remand," *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015), and therefore will not decide the issue raised as to Laura's mental RFC.  But on remand, the ALJ is reminded that a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).  If the ALJ gives less-than-controlling weight to Dr. Nichols's opinion in formulating Laura's mental RFC, he first must consider and explicitly address the *Burgess* factors.

hazards." *Id.* at 271.  But that directly contradicts Dr. Nichols's opinion that Laura's hearing loss severely limited her awareness of hazards, caused safety issues, and made it difficult for her to communicate.  *See id.* at 552, 554-55.  Moreover, because the ALJ failed even to mention Dr. Nichols's opinion in formulating the physical RFC, he certainly did not "explicitly" address the *Burgess* factors in discounting it.[6]

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for" discounting Dr. Nichols's opinion.  *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").  The Court finds no such assurance here.

Aside from Dr. Nichols's opinion regarding Laura's hearing, the record is somewhat limited on Laura's hearing loss.  But what is available supports Dr. Nichols's opinion.  For example, the record includes treatment notes from visits to two hearing specialists—Iris Danziger, M.D., in August 2013, *see* Docket Item 8 at 245-46, and Elizabeth Orlando, Au.D., in July 2019, *see id.* at 533-34.  Dr. Danziger noted that Laura reported her communication often breaking down, and she found that Laura had "severe

---

[6] The ALJ made passing reference to the frequency, length, nature, and extent of treatment, noting that Dr. Nichols "followed [Laura] during the period at issue."  Docket Item 8 at 272.  But because he never even mentioned Dr. Nichols's opinion in connection with Laura's physical RFC, the ALJ said nothing about the amount of medical evidence supporting that opinion or the consistency of the opinion with the remaining medical evidence.

mixed loss" in her right ear and "moderate to severe mixed loss" in her left ear.  *Id.* at 246.  At Laura's July 2019 visit, Dr. Orlando found that Laura's "word recognition scores [were] good" provided that there were "adequate listening levels relative to [her] hearing thresholds"; but she also found that "there [had] been an overall decrease in [Laura's] right ear," "[m]oderate-[p]rofound [m]ixed [s]loping [h]earing [l]oss" in her right ear, and "[m]ild-[s]evere [s]ensorineural [s]loping [h]earing [l]oss" in her left ear.  *Id.* at 534.  And Samuel Balderman, M.D., a one-time consultant who examined Laura in October 2013, opined that Laura "has moderate difficulty with normal conversational hearing."[7]  *Id.* at 235.

Moreover, the lack of medical evidence addressing Laura's hearing loss raises a different issue requiring remand: the ALJ's reliance on his own lay opinion in formulating a specific RFC.  The ALJ's physical RFC limited Laura to "an environment with no more than a moderate noise level as defined in the Selected Characteristics of Occupations (SCO)" but found that she could "frequently use telephones and other audio-visual equipment."  *Id.* at 270.  That part of the RFC was based on Laura's "routine care" and "the lack of indication of deficits in [her] ability to communicate with others or be aware of hazards."  *Id.* at 271.  But it is not at all clear how the ALJ arrived at that specific RFC.  Perhaps he translated Dr. Orlando's note that Laura's "word recognition scores [were] good, provided adequate listening levels relative to hearing thresholds," *id.* at

---

[7] The ALJ afforded "significant weight to [Dr. Balderman's] assessment to the extent that it indicates the claimant is not prevented from conversation due to her hearing impairment" but otherwise discounted Dr. Balderman's assessment because Dr. Balderman assessed Laura prior to the time period at issue and before Laura obtained hearing aids.  *Id.* at 271.  But since the only comment in Dr. Balderman's assessment on Laura's ability to converse was that she had moderate difficulty, it is unclear to this Court exactly what the ALJ gave weight to in Dr. Balderman's opinion.

534, to mean that Laura could tolerate moderate noise levels.  But as a lay person, the ALJ was not qualified to make that determination—especially when Drs. Nichols, Danziger, and Orlando diagnosed serious issues resulting from Laura's hearing difficulties.  *See Balsamo v. Chater*, 142 F.3d 75, 81 81 (2d Cir. 1998) ("[I]t is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *see also Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.").

The Commissioner argues that an ALJ's decision need not be based on a medical opinion "but could be based on treatment records, activities of daily living, portions of a medical opinion, or a combination thereof."  Docket Item 11-1 at 7-8.  More specifically, the Commissioner argues that Laura's physical RFC was based on substantial evidence because the ALJ reasonably relied on Laura's history of conservative treatment, her successful use of hearing aids, Dr. Balderman's opinion, and Dr. Orlando's limited recommendation of annual follow-up appointments.  *Id.* at 21-22.  And the Commissioner is correct that an ALJ need not base an RFC on a formal medical opinion when the record "otherwise contains a useful assessment of a claimant's functional abilities from a medical source."  *Gulczewski v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 490, 497 (W.D.N.Y. 2020).

But that is not the case here.  Although the record includes notes and results from Laura's hearing evaluations, those notes and results do not address Laura's functional abilities.  *See, e.g.,* Docket Item 8 at 246-55, 533-34.  In other words, aside

from Dr. Nichols's opinion—which was either wholly discounted, ignored, or missed—the record lacks a useful assessment of Laura's functional abilities to hear.  "[W]ithout a useful assessment of Plaintiff's functional limitations, and with evidence suggesting severe limitations regarding Plaintiff's hearing loss, the RFC is not supported by substantial evidence."  See Deborah H. v. Comm'r of Soc. Sec., 2021 WL 1608574, at *5 (W.D.N.Y. Apr. 23, 2021)

The Commissioner also argues that this case is like D'Angelo v. Berryhill, 2017 WL 3537129, at *3 (W.D.N.Y. Aug. 17, 2017), where the court found that substantial evidence supported the ALJ's noise-level restriction.  In D'Angelo, however, the record included a medical consultant's opinion noting that "except for the hearing loss when not using a hearing aid, bilaterally, [the plaintiff] ha[d] no other functional limitations," and treatment notes confirmed that the plaintiff's hearing was "stable with treatment and use of hearing aids[]."  Id.  Moreover, unlike Laura, the plaintiff in D'Angelo worked part-time and acknowledged improvement with hearing aids.  Id.  In contrast, Laura testified that even with her right hearing aid, it was hard for her to identify where sounds were coming from.  Docket Item 8 at 289.  And while Dr. Orlando's treatment notes indicated that Laura's hearing aid was "reprogrammed to accommodate the change in her hearing," Dr. Orlando did not indicate whether Laura's hearing was "stable" and whether reprogramming resolved the issue.[8]  Id. at 534.

---

[8] Laura argues that the need to reprogram her hearing aid is further evidence of her inability to hear.  See Docket Item 9-1 at 24, 26.  The Commissioner responds that the simple adjustment of the hearing aid demonstrates that any decrease in hearing was adequately compensated for by the hearing aid.  See Docket Item 11-1 at 19-23.  But from the record this Court cannot say what impact the hearing aid adjustment had and what limitations Laura faced even with hearing aids.  And neither could the ALJ.

In sum, Dr. Nichols opined that Laura had "difficulty communicating due to hearing loss," *id.* at 552; that she was extremely limited in her ability to be aware of normal hazards due to her hearing, *id.* at 554; and that her hearing loss "causes safety issues and decreases sensory awareness," *id.* at 555.  In contrast, the ALJ formulated an RFC based, in part, on "the lack of indication of deficits in [Laura's] ability to communicate with others or be aware of hazards" without even discussing Dr. Nichols's opinions to the contrary.   *Id.* at 271.  Moreover, having discounted, ignored, or simply missed Dr. Nichols's opinion, the ALJ relied on his own lay judgment to create a detailed RFC based on Laura's raw medical data—something he could not do given the complexities of her hearing loss.  The Court therefore remands the matter to the Commissioner for appropriate reconsideration of Dr. Nichols's opinion and Laura's hearing loss.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 11, is DENIED, and Laura's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: January 27, 2022
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE
